UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Libby Mungovan and<br>Andrew Mungovan,<br><br>     Plaintiffs,<br><br>v.<br><br>Wyndham Vacation Resorts, Inc.,<br><br>     Defendant. | Case No. 0:25-cv-61 (KMM/DJF)<br><br>**ORDER** |

Defendant Wyndham Vacation Resorts, Inc.'s ("Wyndham") moves to dismiss the First Amended Complaint (ECF 10 ("FAC")), or alternatively to transfer this action to the United States District Court for the Western District of Wisconsin. Def.'s Mot., ECF 19. For the reasons that follow, the Court grants Wyndham's request for a transfer.

**I. Allegations and Procedural History**

This case involves allegations of deception and fraud in the sale of a timeshare. Libby and Andrew Mungovan (collectively, "Plaintiffs" or "the Mungovans"), live in Minnesota and traveled to the popular resort area of Wisconsin Dells, Wisconsin in 2022. FAC ¶¶ 4, 9. They stayed at Wilderness Resort, a hotel complex operated by Wyndham. *Id.* ¶ 10. The Mungovans were enticed with the offer of 30,000 "Wyndham Reward Points" to attend what was billed as a 90-minute sales presentation about membership in the "ClubWyndham Access Vacation Ownership Plan." *Id.* ¶¶ 9–10. The ClubWyndham

1

program is a timeshare program, and at the sales presentation, attendees were told that ownership in the program was an "'investment that will appreciate in value,' that it is 'a legacy you can leave to your children as part of your estate,' and that it will provide their children with 'vacations for life,' or words to those effects." *Id*. ¶ 11.

The Mungovans were ultimately pitched on a timeshare interest in Wyndham's Glacier Canyon Resort, also in Wisconsin Dells. *Id*. ¶ 13. They were informed that their interest would grant them timeshare points that they could use each year to stay at Glacier Canyon or any Wyndham resort. *Id*. After touring some facilities at Glacier Canyon, the Mungovans were informed of the cost of this timeshare interest. *Id*. ¶¶ 14–15. The cost was too high for the Mungovans, but a Wyndham sales representative then offered a reduced price and an increase in annual timeshare points if the couple committed to their purchase that same day. *Id*. ¶ 17. That is exactly what the Mungovans did. By now several hours into what was originally expected to be a brief sales pitch, the Mungovans were ushered into a room and asked to read and agree to a timeshare contract on a computer screen. *Id*. ¶¶ 18–20. The FAC describes the contract review as being rushed, and the couple ultimately signed. *Id*. ¶¶ 20–21. They received a USB drive and a folder containing 1,608 pages of documents, characterized as being the paperwork that they had just signed, but which the Mungovans allege they later discovered were entirely different documents. *Id*. ¶ 21.

The troubles began once the Mungovans returned home to Minnesota. There, they allege that they discovered numerous problems with their timeshare membership, including higher-than-expected payments and an inability to find time-share availability at Wyndham properties other than Glacier Canyon. *See, e.g.*, *id*. ¶¶ 22–23, 26–28. While in Minnesota,

the Mungovans allege that they received a phone call from a Wyndham representative, asking them to spend more money to attain "VIP" membership in the Wyndham timeshare program because doing so would alleviate the availability issues they had been struggling with. *Id*. ¶¶ 24–25. They declined this offer. *Id*. ¶ 25.

In 2023, the Mungovans again traveled to Wisconsin Dells, this time staying at Glacier Canyon while using their membership points. *Id*. ¶ 29. The Mungovans were enticed into another 90-minute sales presentation, this time with the promise of $175 to use at the resort during their stay. *Id*. Hoping to use the presentation as a way to voice their dissatisfaction with aspects of their membership and seek solutions, the Mungovans instead found themselves on the receiving end of another hard sell. *Id*. ¶ 30. The Mungovans were paired with a sales agent, who expressed concern and surprise at the problems they had experienced and assured them that he could improve their experience while also better educating them about the perks and limitations of their membership. *Id*. ¶ 32. The Mungovans allege that the sales agent then made numerous promises about "fixing" their membership, which involved "upgrad[ing] into a new, even more expensive timeshare, which would yield additional ClubWyndham points" and improved access to stays, but through a complicated set of maneuvers would also result in lower payment costs. *Id*. ¶ 35. The Mungovans were then asked to quickly review and sign a new timeshare contract, which they did. *Id*. ¶ 37.

But according to the Mungovans, the new contract did not fix their problems with the timeshare program. Rather, upon returning to Minnesota, the Mungovans discovered that things were now worse in several ways. First, they allege that unbeknownst to them,

"Wyndham had charged a $7,500.00 down payment onto two new, high-interest, Wyndham-branded credit cards that were issued to [the Mungovans] for that purpose and then maxed out." *Id*. ¶ 38. Second, their monthly payments did not go down, but instead "shot up from $257.72 to $466.00, and their monthly 'maintenance fee' nearly doubled, from $76.42 to $142.60." *Id*. ¶ 41. And third, there was no improvement in the availability of resort stays. *Id*.

The Mungovans got a lawyer. *Id*. ¶ 42. They began putting their monthly timeshare program payments into escrow. *Id*. They tried to initiate arbitration with Wyndham based on language in their contract. *Id*. ¶ 43. Wyndham, in turn, issued a default notice and terminated their membership. *Id*. ¶ 44. Wyndham also allegedly falsely reported the Mungovans as being delinquent debtors and "called [them] incessantly about the account, even after [the Mungovans] told them that the debt was dispute[d] and directed them to their legal counsel." *Id*. ¶¶ 45–46. The Mungovans' arbitration efforts also then failed, allegedly because Wyndham is barred from arbitrating timeshare disputes with the American Arbitration Association due to a "failure to abide by [its] rules." *Id*. ¶¶ 43, 45. This lawsuit followed.

On January 7, 2025, the Mungovans filed their complaint with this Court. ECF 1. On February 24, 2025, and before Wyndham's response, the Mungovans amended their complaint. ECF 10. Based on the foregoing factual allegations, the FAC asserts seven causes of action: (1) violation of the Wisconsin Time-Share Ownership Act, Wis. Stat. Ch. 707 et. seq; (2) violation of Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18 et. seq.; (3) violation of the Wisconsin Prize Notices Statute, Wis. Stat. § 100.171;

(4) Violation of Wisconsin's Unfair Trade Practices Statute, Wis. Stat. § 100.20 et. seq. and Wis. Admin. Code, Ch. ATCP 127, et. seq; (5) fraud; (6) unjust enrichment; and (7) Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.

On March 11, 2025, Wyndham filed the pending motion to dismiss. ECF 19. Wyndham seeks dismissal under Fed. R. Civ. P. 12(b)(3) for improper venue. *See generally* ECF 13 (Mem. in Supp. of Mot. to Dismiss). Alternatively, Wyndham seeks discretionary transfer to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a). *See id*. And Wyndham also seeks dismissal of certain aspects of Counts One and Four under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See id*. The motion was fully briefed, and a hearing was held on May 1, 2025. ECF 28. For the reasons stated below, the Court will grant Wyndham's motion to the extent that it requests discretionary transfer to the Western District of Wisconsin. In doing so, the Court declines to adjudicate dismissal under Fed. R. Civ. P. 12(b)(3)[1] or Fed. R. Civ. P. 12(b)(6).[2]

## II.   Legal Standard

---

[1] There is no dispute that venue is proper in the Western District of Wisconsin. Therefore, the Court will deny Wyndham's motion as moot with respect to a Rule 12(b)(3) dismissal before this matter is transferred.

[2] While the court declines to adjudicate Wyndham's Rule 12(b)(6) arguments before transfer, Plaintiffs have conceded Wyndham's point concerning dismissal of Count Four and have agreed to "abandon that claim." ECF 25 (Opp. to Mot. to Dismiss) at 2 n.2. Therefore, as a matter of housekeeping, the Court will dismiss Count Four with prejudice before this matter is transferred. It will be for the Western District of Wisconsin court to address the remaining Rule 12(b)(6) arguments pertaining to Count One.

"For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district . . . where it might have been brought. . . ." 28 U.S.C. § 1404(a). In deciding whether to transfer an action under this section, district courts exercise substantial discretion. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 697 (8th Cir. 1997) (noting that § 1404(a) "accords the district court much discretion in deciding such motions"). The statute's purpose is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). Transfer motions are not granted as a matter of course, *see In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982), *abrogation on other grounds recognized by Mo. Housing Dev. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir. 1990), and it is the movant's burden to show that the relevant factors make the requested forum more convenient than the forum in which the case was filed, *Cosmetic Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1105 (D. Minn. 2010).

There is no "'exhaustive list'" of factors for courts to consider in deciding whether to transfer a case, "but district courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (quoting *Terra Int'l*, 119 F.3d at 691, and *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The Eighth Circuit has identified "general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l*, 119 F.3d at 691. Often, the former two categories are jointly

considered as part of a "balance of conveniences" and the latter is analyzed on its own. *Id*. at 697.

"[T]he moving party must show that the balance of these factors strongly favors transfer." *Luckey v. Alside, Inc.*, No. 15-cv-2512 (JRT/JSM), 2016 WL 1559569, at *4 (D. Minn. Apr. 18, 2016) (quotation omitted). But a district court is not limited to this list in assessing a transfer motion. *Terra Int'l*, 119 F.3d at 691. And a court can look beyond the pleadings in ruling on a motion to transfer. *Li-Bachar v. Johnson & Johnson*, No. 22-cv-0485 (WMW/DJF), 2022 WL 17094600, at *2 (D. Minn. Nov. 21, 2022); *Anderson Trucking Servs., Inc. v. Hadland*, No. 22-cv-02777 (MJD/LIB), 2023 WL 1477635, at *2 (D. Minn. Feb. 2, 2023).

**III. Discussion**

The Court begins with the observation that this case is not the "classic scenario" by which both parties assert that "it is more convenient . . . to litigate in its home forum rather than the home forum of the other party." *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 885 (D. Minn. 2015). Here, while the Mungovans are at home in Minnesota, this is not the case for Wyndham in the Western District of Wisconsin. Wyndham instead focuses its arguments primarily on the convenience of litigating in the place where the disputed activity occurred. The Court further observes that this case presents a request to transfer that would move this litigation only modestly, to an immediately neighboring district. As such, the possible ramifications of this Court's transfer analysis are fairly muted regardless of outcome. Practically speaking, whether the case remains in the District of Minnesota or whether it is transferred to the Western District

of Wisconsin, neither party will face significant shifts in convenience or inconvenience. With that being said, and having given due consideration to each of the relevant factors, the Court concludes that Wyndham has met its burden to establish that this litigation will proceed more conveniently in the Western District of Wisconsin, and that transfer is therefore proper.

     A.     **Balance of Conveniences**

This inquiry considers sub-factors that include "'(1) the convenience of the parties, (2) the convenience of the witnesses . . ., (3) the accessibility of records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.'" *In re Eyewear Antitrust Litig.*, No. 23-cv-3065 (KMM/JFD), 2024 WL 2956631, at *5 (D. Minn. June 12, 2024) (quoting *Terra Int'l*, 119 F.3d at 696). The Court will take each of these in turn.

***Convenience of Parties***: In evaluating the convenience of the parties, courts may consider the location of the two courthouses and the travel expenses that the parties "would likely incur . . . for airfare, meals and lodging, and losses in productivity from time spent away from work." *In re Apple*, 602 F.3d at 913. The plaintiffs in this case reside in Eagan, Minnesota (FAC ¶ 4), which is approximately 16 miles from this Court and 270 miles from the federal courthouse in Madison, Wisconsin. Wyndham is a large Delaware corporation with its principal place of business in Orlando, Florida. FAC ¶ 5. Wyndham argues that the Western District of Wisconsin is more convenient to itself, but these arguments focus mostly on the fact that the records and property relevant to this lawsuit are located there. The Court addresses those considerations separately. Suffice to say, Wyndham itself would

8

not gain much in terms of convenience by litigating this case in the Western District of Wisconsin over the neighboring District of Minnesota. Plaintiffs, on the other hand, will benefit from litigating a case 16 miles instead of 270 miles away. This benefit is tempered, however, by the fact that the Mungovans are unlikely to be required to regularly appear in either courthouse, save for a settlement conference and the possibility that this matter proceeds to trial. And as this Court recently noted, the "realities of modern litigation make certain aspects of this convenience analysis feel somewhat outdated. Much of this litigation is likely to be conducted via electronic discovery, which can be exchanged and reviewed without lawyers ever having to leave their own offices." *In re Eyewear*, 2024 WL 2956631, at *6 (citing *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020)). In total, this factor weighs slightly in Plaintiffs' favor, though it does not have a significant impact on the Court's overall calculation.

**Convenience of Witnesses**: "The convenience of the witnesses is an important factor for the court since it determines the relative ease of access to sources of proof." *Oien v. Thompson*, 824 F. Supp. 2d 898, 904 (D. Minn. 2010) (quoting *Graff v. Qwest Commc'ns Corp.,* 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999)). However, "[w]hen looking at the convenience of witnesses, courts distinguish between party witnesses and non-party witnesses [because] [c]ourts generally assume that witnesses who are within a party's control, such as employees, will appear voluntarily, even in a distant forum. *In re Eyewear*, 2024 WL 2956631, at *7 (citing *Bae Sys.*, 124 F. Supp. 3d 878 at 885) and *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014)). The parties agree that non-party witnesses are not expected to play much, if any, of a role in this case.

Wyndham characterizes its party witnesses as being the employees of its properties in Wisconsin Dells, who reside nearby in Wisconsin. If the litigation remains in Minnesota, then party witnesses from Wyndham will have to travel from Wisconsin, and if the case is transferred to Wisconsin, then the Mungovans would have to travel from Minnesota. Both parties face the same level of convenience in their preferred forum, and the same level of inconvenience in the other party's preferred forum. And in both cases, the travel required is not excessive.

*Records and Documents*: Wyndham asserts that the records and documents concerning this dispute are located at the Glacier Canyon property. Plaintiffs do not directly address this factor. Neither party appears to believe that this case will involve records and documents that go beyond the obvious (*i.e.*, the contracts at issue). To the extent other records and documents become relevant, neither party suggests that these items would need to be produced or inspected in physical, rather than electronic form, meaning that the "location" of records and documents in this case is a somewhat academic concern. Given these practical considerations, the Court declines to give any weight to this factor in this analysis.

*Location of Conduct*: When weighing a discretionary transfer, courts emphasize the location where the conduct complained of occurred. Indeed, "[i]t is generally appropriate to transfer an action to the district that is the locus of operative facts." *Cosmetic Warriors*, 723 F. Supp. at 1108 (citing *GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs., Inc.*, No. 02-cv-1224 (RHK/AJB), 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003)); *see also GMAC*, 2003 WL 1572007, at *2 ("[A] motion to transfer to the

district in which the [operative] events occurred is likely to succeed."). Unsurprisingly, Wyndham focuses most of its attention on this factor.

As alleged,[3] this case is factually straight-forward. Both of the meetings at which the Mungovans claim they were pressured, misled, and hoodwinked took place in the Wisconsin Dells. The Mungovans assert that they made and received phone calls or other communications and reviewed documents at their home in Eagan. So by Plaintiffs' own allegations, the conduct complained of in this matter occurred almost entirely in the Western District of Wisconsin. With one exception,[4] each cause of action asserted involves conduct that is alleged to have occurred in Wisconsin Dells. Each claim arises from the actions of Wyndham employees at the Wilderness Canyon and Glacier Canyon resorts

---

[3] In several places, Plaintiffs cast doubt on whether Wyndham has made the necessary showing for transfer, including whether the conduct in this case actually occurred in the Western District of Wisconsin. *See, e.g.*, ECF 13 at 6 n.4; *id.* at 9 n.5; *id.* at 10–11. In doing so, Plaintiffs suggest that Wyndham needed to support its arguments through attorney affidavits. For certain transfer factors, the Court agrees that the record lacks evidence in either direction—for example, neither party provides facts about the backlog of cases in the Western District of Wisconsin versus the District of Minnesota. However, on the question of the location of relevant conduct, it is the pleadings alone that provide all necessary answers. This is consistent with the requirements of 28 U.S.C. § 1404(a). *See Bae Systems*, 124 F. Supp. 3d at 883 ("When considering a request to transfer venue under § 1404(a), a court is not limited to a determination on the pleadings. A court may consider undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents.") (cleaned up). Here, Plaintiffs' own allegations reveal that nearly all relevant conduct to this case occurred in Wisconsin Dells, Wisconsin, and Wyndham is simply treating this as an undisputed fact. No additional evidentiary showing is needed.

[4] Plaintiffs' seventh cause of action, under FCRA, involves a combination of locations, whereby the Mungovans took certain actions from their home in Minnesota (*i.e.*, placing further timeshare payments in escrow) and Wyndham is alleged to have taken certain actions (*i.e.*, debt reporting and harassing phone calls) from other locations. It is not clear to what extent that Wyndham's relevant conduct to the FCRA claim arose out of the Western District of Wisconsin or occurred somewhere else.

during two timeshare sales presentations, is based on the language of the contracts that the Mungovans signed at those two locations, or challenges the circumstances around their signing. In short, this factor weighs heavily in favor of transfer.[5]

### B. Interests of Justice

Courts weigh the interests of justice by considering factors that include judicial economy, the plaintiff's chosen forum, the costs to the parties of litigating in either forum, the ability to enforce a judgment, barriers to a fair trial, any issues with conflict of law, and advantages of having local courts determine local law. *See Terra Int'l*, 119 F.3d at 696; *Klatte*, 995 F. Supp. 2d at 957. The parties focus on some of these factors more than others, and the Court will address those that appear to have real salience to the question of transfer in this case.

***Plaintiffs' Chosen Forum***: Like the locus of relevant conduct, the Plaintiffs' choice of forum is a significant factor in the Court's transfer analysis. Here, the Mungovans chose to bring their case in the District of Minnesota, the district where they reside. "'[C]ourts in this District have repeatedly found that deference to the plaintiff's choice of forum is appropriate where the plaintiff resides in the chosen forum.'" *Oien*, 824 F. Supp. 2d at 905 (quoting *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 795 (D. Minn. 2010)) (alteration in *Oien*). But that deference is "significantly less" when the "underlying events giving rise to the litigation did not occur in the forum." *Id*. (quoting *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 408 (D. Minn. 2009)).

---

[5] Consideration of each forum's substantive law has significant import in this case, but the Court discusses it below in connection with the interests of justice.

Nevertheless, where underlying events occurred elsewhere but there is still a "relevant connection between Minnesota and the parties, potential witnesses, and the dispute," a plaintiff's forum choice is entitled to "more than minimal weight." *Id*. (cleaned up).

The Mungovans' choice falls into this middle category. As explored above, the facts giving rise to this dispute occurred almost entirely in the Western District of Wisconsin, which cuts against the automatic deference for their forum choice in Minnesota. But the Mungovans are residents of Minnesota, who find themselves in a dispute with Wyndham over timeshare sales that occurred in a regional tourism hub of an immediately neighboring state. So, this dispute obviously has some "relevant connection" to the District of Minnesota, even if there is much greater connection to the Western District of Wisconsin. Accordingly, the Court finds that this factor weighs against transfer.

***Advantages of Having Local Courts Determine Local Law***: This factor often has little sway in the transfer analysis because " courts can "apply the law of another state as easily as their own." *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 995 (D. Minn. 2009). Indeed, "[f]ederal district courts are 'faced almost daily with the task of applying some state's law other than that of the forum state, and [they are] capable of resolving . . . dispute[s] under' another state's law." *Cosmetic Warriors*, 723 F. Supp. 2d at 1108 (quoting *Hughes v. Wal–Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001)). But where a court must address complicated or unresolved questions of another's state's law, this transfer factor may become more important. *Oien*, 824 F. Supp. 2d at 907–08.

This case again falls somewhere in the middle. Three out of six remaining causes of action asserted by Plaintiffs raise violations of Wisconsin law. While nothing about these

13

claims appears particularly complex or beyond this Court's capacity to fairly adjudicate, two critical claims nonetheless arise under relatively obscure Wisconsin laws: Count One alleges violations of the Wisconsin Time-Share Ownership Act, codified at Wis. Stat. Ch. 707, and Count Three alleges violations of the Wisconsin Prize Notices Statute, codified at Wis. Stat. § 100.171. Indeed, this Court is unable to locate any instance in which a court outside of the state of Wisconsin has ever addressed a claim arising under Wis. Stat. Ch. 707, and only one instance, by the United States District Court for the Central District of Illinois,[6] of a non-Wisconsin court addressing a claim arising under Wis. Stat. § 100.171. While this novelty factor does not, on its own, require transfer to the Western District of Wisconsin, the Court anticipates that it will be asked to adjudicate aspects of Wisconsin law as a matter of first impression. Indeed, the parties are already litigating the meaning of, and the obligations imposed by, Wis. Stat. § 707.47(2), and neither side was able to locate any relevant precedent in support of their positions. In short, if this case will involve the first-time adjudication of an aspect of Wisconsin's timeshare laws, it would be preferable for those decisions to be rendered by a court in Wisconsin. This factor therefore also weighs moderately in favor of transfer.

***Conclusion***: Taken together, the discretionary factors point toward the appropriateness of transfer to the Western District of Wisconsin. There are two moderate-

---

[6] *Travel Servs., Inc. v. Vacation Tours USA, Inc.*, 221 F. Supp. 3d 1024 (C.D. Ill. 2016). The court did not substantively address Wis. Stat. § 100.171 because it agreed with the defendants that there was a lack of personal jurisdiction in Illinois, in part because "the litigation-related conduct that serves as the basis for the Plaintiffs' complaint relates exclusively to Wisconsin." *Id*. at 1033.

to-significant factors in favor of transfer, and only one against transfer. The remainder are neutral, underlining the extent to which the question of transfer to a neighboring district will have a minimal impact on this litigation. On a practical level, this means that it is easier for Wyndham to meet its burden under 28 U.S.C. § 1404, and the Court ultimately concludes that it is has done so.

## IV.    Order

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. As agreed by Plaintiffs, Count Four of the Amended Complaint (ECF 10) is **DISMISSED** with prejudice.

2. Defendant's Motion to Dismiss (ECF 19) is **GRANTED in part and DENIED in part**;

3. The Motion is **DENIED** as moot to the extent that Defendant seeks dismissal for improper venue under Fed. R. Civ. P. 12(b)(3).

4. The Motion is **GRANTED** to the extent that it seeks to transfer this case to the Western District of Wisconsin.

5. The Court otherwise declines to rule on the remaining portion of the motion, seeking dismissal under Fed. R. Civ. P. 12(b)(6). Instead, it will be for the receiving court to address that aspect of the motion, at its discretion.

6. The Clerk of Court is directed to transfer this action to the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

Date: June 16, 2025

                                                  *s/ Katherine M. Menendez*
                                                  Katherine M. Menendez
                                                  United States District Judge